***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
3. The employee, employer and insurers are subject to the North Carolina Workers' Compensation Act.
4. William Curtis Fowler was employed by The Forest at Duke on March 12, 1998 and continued to be so employed on June 28, 2000.
5. The alleged dates of injury are March 12, 1998 (I.C. File No. 845523) and June 28, 2000 (I.C. File No. 063637).
6. Plaintiff's compensation rate for I.C. File No. 845523 (March 12, 1998) is $330.68 based on an average weekly wage of $496.00.
7. Plaintiff's compensation rate for I.C. File No. 063637 (June 28, 2000) is $392.80 based on an average weekly wage of $589.17.
8. Plaintiff was terminated by The Forest at Duke on June 7, 2001.
9. The parties have stipulated into evidence as Stipulated Exhibit 1, a packet of documents including: Industrial Commission forms; plaintiff's medical records; modified work documents from defendant-employer; correspondence from defendant-employer to plaintiff; plaintiff's recorded statement, dated September 12, 2000; and plaintiff's medical bills at Triangle Orthopaedics.
10. The parties stipulated into evidence as Stipulated Exhibit 2, a report reflecting the results of an investigation conducted on plaintiff by Zenith Insurance.
11. The parties stipulated into evidence as Stipulated Exhibit 3, a surveillance video.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a 56-year-old male, born October 24, 1945 who had graduated from high school. After high school plaintiff had been employed with a bread company, had worked sixteen and one half years as a meat cutter, had run a cooking machine at Liggett Myers for three years until the plant closed, had made custom rugs for five years and had done physical work his entire life.
2. In 1992, plaintiff became employed with defendant-employer in maintenance. Plaintiff was hired as a carpenter but defendant-employer needed a plumber so plaintiff attended school and became a plumber.
3. On March 12, 1998, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment when he slipped and fell while unloading landscape timbers and injured his left arm. (I.C. File No. 845523). The Hartford was the carrier on the risk at the time.
4. Plaintiff was eventually referred to Dr. Kevin Speer, a board-certified orthopaedic surgeon with a subspecialty in sports medicine and shoulder surgery. On May 4, 1998, Dr. Speer ordered a MRI, which revealed a complete tear of the supraspinatus tendon and some tear of the infraspinatus tendon with some retraction. There was a very large tear in plaintiff's shoulder.
5. On July 21, 1998, plaintiff underwent a left rotator cuff repair performed by Dr. Speer. Plaintiff's tear was so large that Dr. Speer was only able to repair a portion of it.
6. Plaintiff's shoulder pain did not resolve after his rotator cuff repair and by mid September and October plaintiff's left shoulder was stiffening up and becoming immobile. On December 17, 1998, plaintiff underwent a second surgery performed by Dr. Speer, an arthroscopic surgery to release plaintiff's scar tissue hoping to increase plaintiff's motion.
7. During the entire time plaintiff had seen Dr. Speer he was restricted to no occupational use of his left shoulder or left upper extremity. By March 31, 1999, plaintiff's motion was better but he had a permanent problem of rotator cuff injury and weakness.
8. On July 12, 1999, Dr. Speer was of the opinion that plaintiff had reached maximum medical improvement from his March 12, 1998 left shoulder injury and retained a 31% permanent partial disability of his left upper extremity. Plaintiff was also given permanent lifting restrictions of no lifting above chest level and with elbows at his side no lifting greater than 50 pounds.
9. Defendant carrier Hartford sent plaintiff to Dr. Robert Wyker, an orthopaedic surgeon, on October 28, 1999 for a one-time visit second opinion on plaintiff's rating. Dr. Wyker was of the opinion that plaintiff had a 20% permanent partial impairment of the left upper extremity.
10. Plaintiff returned to work after his two surgeries supposedly in a light duty capacity. However, plaintiff generally performed many of the same duties which he did before.
11. On a few occasions following plaintiff's return to work after his two surgeries and prior to June 28, 2000, plaintiff complained of some right shoulder pain. However, plaintiff never sought treatment for this pain and was able to continue his duties.
12. On June 28, 2000, plaintiff was called upon to help clean trash out of a trailer. The trailer was backed up by a golf cart to the loading dock where the dumpsters were located. The trailer had homemade side rails which were made out of material that looked similar to decking. The trailer was low to the ground at approximately the height of a boat trailer, well below the loading dock. As plaintiff was attempting to climb up to the loading dock from the trailer, he was using his right arm to pull because his left arm, due to his previous injury, did not have the strength. As plaintiff was trying to pull himself up on the loading dock with his right arm, the railing of the trailer shifted and plaintiff's 260-pound weight was pulled against his right arm. Plaintiff was reaching out in front of him and slightly to the right with his right arm when this occurred. Plaintiff felt immediate and sharp pain in his front upper right shoulder and his right shoulder was dislocated. Plaintiff's co-worker, Steve Short, pulled plaintiff's arm and snapped it back into place.
13. Plaintiff reported his injury to his supervisor and was eventually given permission by The Hartford to see Dr. Speer. Plaintiff presented to Dr. Speer on August 23, 2000 complaining of pain in his right shoulder and relating the incident with the trailer at work. A MRI performed showed a large tendon tear on the right side, and Dr. Speer recommended a rotator cuff repair and arthroscopy. By this time, defendant-carrier Zenith Insurance which was on the risk on June 28, 2000 entered the picture and required plaintiff to go to Triangle Orthopaedic and see Dr. William Mallon.
14. On March 6, 2001, plaintiff presented to Dr. William Mallon. Plaintiff gave Dr. Mallon a history of the trailer incident. Dr. Mallon's opinion is that the description of plaintiff's incident is consistent with a dislocation. Plaintiff's x-rays revealed a rotator cuff tear of the right shoulder with full thickness tear and a supraspinatus tendon tear. Dr. Mallon agreed with Dr. Speer's recommendation of fixing the tear surgically and referred plaintiff back to Dr. Speer for treatment.
15. Zenith Insurance would not allow plaintiff to treat with Dr. Speer, and plaintiff was ultimately referred back to Dr. Mallon on October 16, 2001 for treatment. On November 16, 2001, plaintiff underwent arthroscopic shoulder surgery to repair the rotator cuff tear and to fix his torn bicep. This surgery was performed by Dr. Mallon.
16. Plaintiff was placed on a sling after his surgery and began physical therapy within one week of his surgery. Plaintiff was restricted to no lifting at all for at least three months. At the time of Dr. Mallon's deposition, plaintiff was continuing to be seen postoperatively and had not reached maximum medical improvement.
17. Dr. Mallon is of the opinion that a typical recovery for plaintiff's condition is three to six months to return to reasonable function and two to three years to get full strength back. He is further of the opinion that following such shoulder repairs, patients generally do not return to normal and that there is a reasonably high rate of re-tearing of the tendons.
18. Dr. Mallon was of the opinion that it is hard to return rotator cuff tear patients back to full duty if their work is manual. He anticipates that plaintiff will have permanent restrictions on the amount of lifting he may do and that he will be restricted to no lifting above shoulder level.
19. Dr. Mallon is of the opinion that plaintiff's right shoulder dislocation caused his rotator cuff tear and that plaintiff's torn cartilage is surgical evidence of the dislocation. Dr. Mallon was further of the opinion that plaintiff's dislocation was caused by trauma.
20. Dr. Speer's opinion is that plaintiff's right shoulder dislocation was a result of trauma and not over compensation for his left shoulder. Plaintiff may have had some contribution by overcompensating with his right arm; however, the final size of plaintiff's right shoulder tear was a result of the dislocation in the right shoulder which was caused traumatically.
21. Plaintiff returned to work from his March 12, 1998 compensable injury by July 1999 performing his work within his permanent restrictions for the left shoulder. Plaintiff returned to work performing the same or similar duties to that which he was performing before his injury and was earning a wage which was greater than that which he was earning at the time of his injury on March 12, 1998.
22. On June 7, 2001, defendant-employer wrote plaintiff saying that his medical report showed that he was "unable to perform the essential functions of any of the positions in our maintenance department, with or without accommodations" and terminated plaintiff's employment effective that date. Plaintiff has not received temporary total disability compensation or pay since that date.
23. Following plaintiff's July 12, 1998 compensable injury, plaintiff was no longer able to earn wages.
24. On March 12, 1998, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. At that time, The Hartford was the carrier on the risk.
25. As a direct and proximate result of plaintiff's March 12, 1998 compensable injury, plaintiff retains a 31% permanent partial impairment of the left upper extremity. Plaintiff is entitled to permanent partial disability compensation from The Hartford at the rate of $330.68 per week for a period of 74.4 weeks as a result of his 31% permanent partial impairment of the left upper extremity.
26. On June 28, 2000, plaintiff sustained a compensable injury by accident arising out of his employment when, as he was climbing on the rails of a trailer, it shifted causing his weight to be borne by his right shoulder resulting in a dislocation and rotator cuff tear. Zenith Insurance was the carrier on the risk at the time of plaintiff's June 28, 2000 compensable injury.
27. As a direct and proximate result of his June 28, 2000 injury, from June 7, 2001 and continuing, plaintiff has been unable to engage in activities required by his former job.
28. As a direct and proximate result of plaintiff's compensable injury, plaintiff is entitled to temporary total disability compensation from Zenith Insurance at the rate of $392.80 per week for the period from June 7, 2001 and continuing.
29. Plaintiff has not yet reached maximum medical improvement for his compensable right shoulder injury.
30. Plaintiff is at a substantial risk of the necessity of future medical compensation for both his left and right shoulders.
31. Plaintiff is entitled to have The Hartford pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury to his left shoulder on March 12, 1998.
32. Zenith Insurance Company shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury to his right shoulder on June 28, 2000.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a direct and proximate result of plaintiff's March 12, 1998 compensable injury, plaintiff retains a 31% permanent partial impairment of the left upper extremity. Plaintiff is entitled to permanent partial disability compensation from The Hartford at the rate of $330.68 per week for a period of 74.4 weeks as a result of his 31% permanent partial impairment of the left upper extremity. N.C. Gen. Stat. § 97-31(13).
2. On June 28, 2000, plaintiff sustained a compensable injury by accident arising out of his employment when, as he was climbing on the rails of a trailer, it shifted causing his weight to be borne by his right shoulder resulting in a dislocation and rotator cuff tear. Zenith Insurance was the carrier on the risk at the time of plaintiff's June 28, 2000 compensable injury. N.C. Gen. Stat. § 97-2(6).
3. As a direct and proximate result of his June 28, 2000 injury, from June 7, 2001 and continuing, plaintiff has been unable to engage in activities required by his former job. He is entitled to temporary total disability compensation from Zenith Insurance at the rate of $392.80 per week for the period from June 7, 2001 and continuing. Plaintiff has not yet reached maximum medical improvement for his compensable right shoulder injury. N.C. Gen. Stat. § 97-29.
4. Plaintiff is at a substantial risk of the necessity of future medical compensation for both his left and right shoulders. N.C. Gen. Stat. § 97-25.1.
5. Plaintiff is entitled to have The Hartford pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury to his left shoulder on March 12, 1998. N.C. Gen. Stat. §97-25.
6. Zenith Insurance Company shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable June 28, 2000 injury to his right shoulder. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For his compensable March 12, 1998 injury to his left shoulder, defendant carrier The Hartford shall pay permanent partial disability compensation to plaintiff in the amount of $330.68 for a period of 74.4 weeks. This amount has accrued and shall be paid in a lump sum subject to an attorney's fee contained in Paragraph 3.
2. For his compensable June 28, 2000 injury, defendant carrier Zenith Insurance shall pay temporary total disability compensation to plaintiff at the rate of $392.80 for the period from June 7, 2001 and continuing until further order of the Commission. Portions of this amount have accrued and shall be paid in a lump sum. This amount shall be subject to an attorney's fee contained in paragraph 3.
3. A reasonable attorney's fee of 25% of the compensation due under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid by paying 25% of the lump sums due and thereafter paying plaintiff's counsel every fourth check due to plaintiff.
4. Defendant carrier The Hartford shall continue to pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable March 12, 1998 injury to his left shoulder as long as the same tends to effect a cure, give relief or lessens plaintiff's period of disability.
5. Defendant carrier Zenith Insurance Company shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable June 28, 2000 injury to his right shoulder as long as the same tends to effect a cure, give relief or to lessens plaintiff's period of disability.
6. Defendants shall pay the costs, each carrier to pay one half of the total.
This the ___ day of September 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DCS/bjp